AGNES LEARN, Claimant, *v.* STATE OF NEW YORK.

Claim No. 15775.

(State of New York, Court of Claims, October, 1920.)

*Bridges — defective — injuries caused by shying of horse — when state not liable for damages — Canal Law, § 47.*

For several months prior to the day upon which claimant, with reasonable care, was driving across a bridge which for many years the state has maintained, the state permitted the plank floor of the bridge to remain in a condition highly dangerous to traffic and at one point there was a hole in the floor six feet by two feet in area. Claimant's horse in passing the hole became frightened and shied and the wheel of the carriage was thrown off the right side of the bridge, which had no guard rails, and claimant was seriously injured by being thrown from her carriage. *Held,* that under the limited liability and jurisdiction provided by section 47 of the Canal Law the claim for damages must be dismissed on the ground that said section did not apply to said claim.

CLAIM for damages resulting from injuries sustained by reason of defective flooring of a bridge.

M. B. Jewell, for claimant.

Henry P. Nevins, deputy attorney-general, for state.

CUNNINGHAM, J.  The Cuba lake or reservoir in Allegany county was created by the state to provide a feeder for the old Genesee Valley canal.  A dam constructed at the easterly end of the lake set back the water which made an outlet channel for itself at the westerly end.  The state, at various times, appropriated the site of this outlet and erected a bridge over it, appropriating also the land at the bridge location.  The bridge in existence at this point in 1918 had a span of seventy-five feet and carried state highway No. 4 across the outlet.  For many years this bridge was maintained by the state through the department of public works.  For two or three months prior to the 15th day of June, 1918, the state permitted the plank floor of the bridge to remain in a condition highly dangerous to traffic.  The planks were loose, some of them were broken, others were missing in whole or in large part, and at one point there was a hole in the floor six feet by two feet in area.  There were no guard rails on the sides of the bridge.

On that day claimant was driving home from the village of Cuba across the bridge.  Her horse was a reasonably safe and gentle animal, but when passing this large hole in the bridge floor, became frightened and shied away from it, throwing the wheel of the claimant's carriage off the right side of the bridge and throwing the claimant from the carriage, seriously injuring her.  She claims damages against the state for her injuries in the sum of $5,000.

We find no difficulty in concluding that the claimant was in the exercise of reasonable care, and that the state, and its employees, were guilty of negligence in the maintenance and care of the bridge which proximately resulted in the claimant's injuries.

The question which confronts us, however, is that of the legal liability of the state for the injuries so

suffered. There is no longer doubt of the state's non-liability for the negligence of its representatives in the absence of a statute specifically waiving its exemption from and assuming liability. Unless such a statute, applicable to the facts in this case, is to be found, the claimant cannot recover in this proceeding. *Smith* v. *State,* 227 N. Y. 405.

The Highway Law assumes liability by the state in a limited and defined class of cases, but bridges more than five feet in span are expressly excluded therefrom and from the jurisdiction and control of the highway commission. Highway Law, § 176; Id. § 2, subd. 5. That this is correct is expressly conceded by both parties to this litigation.

The claimant contends that the statutory assumption of liability in this case is to be found in section 47 of the Canal Law, which reads in part as follows: " There shall be allowed and paid to every person sustaining damages from the canals or from their use or management, or resulting or arising from the neglect or conduct of any officer of the state having charge thereof, or resulting or arising from any accident, or other matter or thing connected with the canals, the amount of such damages to be ascertained and determined by the proper action or proceeding before the court of claims; * * *."

Admittedly, if this statute does not apply, the claim must be dismissed. In the determination of that problem, an inquiry into the statutory history of the bridge becomes essential. The evidence establishes beyond question, and it is not disputed, that originally and for many years the bridge was a part of the canal system, and that it was maintained pursuant to statutes applying to that system. Canal Law, § 121; Laws of 1894, chap. 338, § 111; Laws of 1839, chap. 207, § 1,

The Genesee Valley canal, as a matter of fact, was abandoned about 1878, and part of it sold for a railway roadbed. On May 22, 1912, upon the report and recommendation of the superintendent of public works, the canal board adopted the following resolution:

" *Resolved,* That the lands owned by the State and located within the Cuba dam and reservoir site be, and the same are hereby abandoned, and be it further

"*Resolved,* That the Secretary be directed to transmit a copy of the communication and resolution to the Commissioners of the Land Office."

Apparently, this action of the canal board was taken pursuant to the Canal Law (Laws of 1909, chap. 13), section 15, subdivision 4, providing: " The Canal Board may: * * * Determine whether lands, taken for the purposes of the canals, have been abandoned."

In May, 1913, chapter 738 of the Laws of 1913 was enacted and became effective, providing in part as follows: The reservoir known as the Cuba or Oil Creek reservoir located in the county of Allegany and partly in the county of Cattaraugus, the lands under and about the same, the structures thereon and the appurtenances thereto including all water channels, rights and easements connected therewith now belonging to the state shall not be sold but the same are hereby placed under the care and control of the conservation commission to be preserved and maintained for reservoir purposes for the benefit and profit of the people of this state. The commission shall appoint a keeper who shall receive an annual salary of six hundred dollars and who, subject to the direction of the commission, shall have charge of the reservoir and of all lands and appurtenances connected therewith and operate the controlling works of the

reservoir. The commission shall make all rules and regulations necessary in its judgment for the use and preservation of the said premises and property. The commission shall, except as otherwise provided in this act, maintain the impounding dam and all structures connected with the reservoir and the channels for discharging water therefrom in a safe and proper state of repair and efficiency.''

In May, 1916, chapter 451 of the Laws of 1916, section 1, became operative, and among other things provided for the amendment of the Conservation Law as follows:

'' Section 62. Definitions. The following words and phrases used in this article are defined as follows:  *   *   *

'' 6. Cuba Reservation shall include all the lands owned by the State surrounding Cuba Lake in the counties of Allegany and Cattaraugus.''

Then followed the enactment of chapter 266 of the Laws of 1917, section 1, in effect April, 1917, which added subdivision 32 to section 50 of the Conservation Law. This provided that the conservation commission '' have the care, custody, control and administration of the Cuba Reservation. The said reservation is to be preserved and maintained for reservoir and camping purposes.''

In view of the enactments to which we have referred, it is obvious to us that the Canal Law, section 47, affords the claimant no redress. It is clear that its provisions apply exclusively to the time when the accident occurred or the damages accrued. Surely no reasonable construction of the statute permits the conclusion that the legislature, by the language of the statute, intended to enact that once a part of the canal system always a part of it, and that '' any matter or thing connected with the canals '' once, forever

remains connected with the canals for the purpose
of establishing the state's liability. The ordinary,
reasonable and fair construction of the statutory lan-
guage requires that the claimant must have sustained
damages from what were *at that time* " the canals,"
or from the use or management of what were *at that
time* canals, or resulting or arising from the neglect or
conduct of any officer of the state having charge of what
were *at that time* canals, or resulting or arising from
any accident or other matter or thing *at that time* con-
nected with the canals, in order to permit recovery. It
is certain beyond logical contradiction, that this stat-
ute refers to conditions existing at the time of the
accident or accrual of the damages. If the legislature
had intended to assume or impose liability for injuries
due to structures, negligence, matters or things which,
*at any time whatsoever,* had been part of the canal
system of the state, irrespective of their status at the
time of the injury, the legislature would have used
language appropriate for that purpose. Whatever
effect, if any, the resolution of the canal board may
have had upon the status of Cuba lake in general, and
this bridge in particular, surely the enactments which
we have set forth had changed wholly the status of
the bridge prior to July, 1918. No longer was it a part
of the canal system of the state. Neither the canal
board nor the superintendent of public works had any
jurisdiction over it. They had been succeeded in care,
custody, control and administration by the conserva-
tion commission, and the Cuba lake or reservoir with
the surrounding lands of the state, including the
bridge, before July, 1918, became the " Cuba Reserva-
tion," no longer existing as a part of the canal sys-
tem of the state, or for canal purposes, in fact or
legally, but " to be preserved and maintained for
reservoir and camping purposes." With the enact-

ment of these statutes, the bridge ceased absolutely and in all respects to be part of the canals, or a matter or thing connected with them. It became then a constituent and integral part of the conservation system of the state, held, maintained and operated for purposes and ends utterly different from theretofore. With that change in its relationship, section 47 of the Canal Law ceased to apply. No language within our ken could terminate the former status of Cuba lake and structures, and make the change we assert, more completely and clearly, than that chosen by the legislature.

The case of *Woodman* v. *State,* 127 N. Y. 397, is inapplicable here. There, the language used by the legislature failed to accomplish the result we find expressed so clearly in the statutes with which we are concerned in this case. On the contrary, the language there used contained an implied statutory recognition of the continuation of the bridge as a part of the canal system at the time of the accident, and of the obligation of the state, at that time, to keep it in repair as such, and therefore of the application of section 47 of the Canal Law to the case.

In addition to the foregoing considerations, it would seem that section 47 of the Canal Law has no application to the Genesee Valley canal or the structures connected with it. Section 2 of the Canal Law enumerates the canals to which the chapter, of which section 47 is a part, applies. The Genesee Valley canal is not among those enumerated. *Hughson* v. *State,* 11 Ct. Claims Rep. 37.

Whatever may be said in favor of the duty or wisdom of full and complete statutory assumption by the state of all its moral obligations, contract or tort, the fact remains that our legislature has not seen fit as yet to adopt that policy. The only redress, if any,

available to the claimant is by recourse to the legislature. Under the limited liability and jurisdiction provided by section 47 of the Canal Law, the claim must be dismissed.

Findings in accordance with this conclusion may be submitted.

ACKERSON, P. J., concurs.

Claim dismissed.